UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NAFTALI MOSES, et al.,

               *Plaintiffs*,

    v.

BNP PARIBAS, S.A.,

               *Defendant*.

Case No. 24-cv-4938 (JGLC)

**REPLY MEMORANDUM OF LAW OF DEFENDANT BNP PARIBAS S.A. IN SUPPORT OF ITS MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S SEPTEMBER 30, 2025 OPINION AND ORDER**

**TABLE OF CONTENTS**

**Page**

ARGUMENT.................................................................................................................... 1

I.     Reconsideration Is Warranted Because The Order Overlooked *Ashley*'s Controlling
Holding..................................................................................................................... 1

II.    Plaintiffs' Claims Fail Under *Ashley*.................................................................. 2

CONCLUSION............................................................................................................... 6

CERTIFICATE OF COMPLIANCE............................................................................. 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashley v. Deutsche Bank Aktiengesellschaft,*
    144 F.4th 420 (2d Cir. 2025) ...................................................................... *passim*

*Fraenkel v. Standard Chartered Bank,*
    2025 WL 2773251 (S.D.N.Y. Sep. 26, 2025) ........................................... 2, 4, 6

*Janes v. Triborough Bridge & Tunnel Auth.,*
    889 F. Supp. 2d 462 (S.D.N.Y. 2012) ............................................................ 1

*Kaplan v. Lebanese Canadian Bank, SAL,*
    999 F.3d 842 (2d Cir. 2021) ........................................................................... 5

*Siegel v. HSBC North American Holdings, Inc.,*
    933 F.3d 217 (2d Cir. 2019) ........................................................................... 6

*Structured Asset Sales, LLC v. Sheeran,*
    673 F. Supp. 3d 415 (S.D.N.Y. 2023) ............................................................ 2

*Twitter, Inc. v. Taamneh,*
    598 U.S. 471 (2023) ....................................................................................... 3

# ARGUMENT

Plaintiffs' Opposition, ECF No. 49 ("Opp'n"), tries to erase *Ashley*'s controlling holding, overlooked by the Order and compelling dismissal of this case. *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 444–45 (2d Cir. 2025).[1] The Opposition's claim that foreseeability alone can satisfy the "knowing and substantial assistance" requirement is unmoored from the actual holding in *Ashley* regarding banking services to alleged "fronts" for terrorists, which requires a "discernable nexus between the [banking services] and the [specific] attacks committed against [p]laintiffs" and that the defendant "knew or intended that [the FTOs] would receive the funds." *Id.*

## I.    RECONSIDERATION IS WARRANTED BECAUSE THE ORDER OVERLOOKED *ASHLEY*'S CONTROLLING HOLDING

Plaintiffs' Opposition starts with a strawman—namely, that because the parties addressed *Ashley* in letter briefs and the Order discusses the decision, the Court cannot have "overlooked" controlling law. Opp'n at 2. But the fact that BNPP brought *Ashley* to the Court's attention during the pendency of the motion to dismiss establishes an element necessary for relief, *i.e.*, that BNPP raised grounds for dismissal that the Order overlooked and is not using reconsideration to make *new* arguments. *Cf. Janes v. Triborough Bridge & Tunnel Auth.*, 889 F. Supp. 2d 462, 465 (S.D.N.Y. 2012) (explaining that "[i]n order to be considered under a motion for reconsideration, an argument must have been previously presented to the court" and granting motion for reconsideration based on arguments in letter briefing overlooked by the court).

*Ashley* contains three separate holdings on three separate sets of aiding and abetting allegations. *First*, the alleged knowing provision of banking services to fertilizer factories that

---

[1] Capitalized or abbreviated terms not defined here are defined in either BNPP's MTD, ECF No. 28, or BNPP's Memorandum of Law in Support of Reconsideration, ECF No. 43 ("Mot.").

produced chemicals used in improvised explosive devices in Afghanistan, *Ashley*, 144 F.4th at 428–30, was not "conscious and culpable" assistance to the attacks, *id.* at 443. *Second*, the provision of banking services to a "well-known [FTO] money launderer" and "known and suspected fronts for Iranian terrorist groups," *id.* at 430–32, lacked a sufficient nexus to specific attacks and intent to contribute to the FTO's terrorist aims for "knowing and substantial assistance," *id.* at 444–45. *Third*, the alleged knowing facilitation of tax fraud schemes for terrorist affiliates, *id.* at 432–34, failed to establish general awareness because contemporaneous "public sources connect[ed] VAT fraud with terrorism generally" but did not discuss the banks' clients, *id.* at 446.

Although the Order cites *Ashley* (regarding JASTA's framework and the fertilizer allegations), it nowhere analyzes *Ashley*'s controlling holding dismissing allegations of illegal banking services for terrorist "fronts." This oversight warrants reconsideration. *See Structured Asset Sales, LLC v. Sheeran*, 673 F. Supp. 415, 421–22 (S.D.N.Y. 2023) (granting reconsideration where prior decision applied "one holding" of appellate decision but disregarded a separate holding from same decision). Plaintiffs' arguments boil down to the improbable assertion that the Order *sub silentio* rejected the applicability of *Ashley*'s key holding to this case, a holding that another court in this district demonstrated "foreordain[ed]" dismissal of nearly identical claims in a parallel litigation. *Fraenkel v. Standard Chartered Bank*, 2025 WL 2773251, at *9–11 (S.D.N.Y. Sep. 26, 2025).

## II.    PLAINTIFFS' CLAIMS FAIL UNDER *ASHLEY*

*Ashley* establishes that "knowing and substantial assistance" requires more than a theory of "money's fungibility" and knowledge of a bank client's "apparent or possible connection to terrorists." *Ashley*, 144 F.4th at 444. Moreover, "it is not enough to say that the defendant

assisted the terrorist organization's 'activities in general.'"  *Id.*  The Opposition does not rebut BNPP's showing that the Order overlooked that holding.

***First*, the Order overlooked *Ashley*'s guidance on *Twitter*'s sliding scale for fungibility theories of liability.**  *Twitter* holds that "the more attenuated the nexus [to a specific attack], the more courts should demand that plaintiffs show culpable participation through intentional aid that substantially furthered the [terrorist act]."  *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 506 (2023).  *Ashley* applies this principle to claims against banks based on money's fungibility, requiring that plaintiffs allege the bank "knew or intended that the [FTOs] would receive the funds" given the level of attenuation between the banking services at issue and the specific attacks.  144 F.4th at 444–45.

Plaintiffs wrongly claim BNPP's reading of *Ashley* contravenes *Twitter*'s sliding scale. Opp'n at 5.  In their failed petition for rehearing in *Ashley*, Plaintiffs' counsel made the same arguments to claim that the *Second Circuit* misread *Twitter*.  *See* Petition for Rehearing and Rehearing En Banc at 5–6, *Wildman v. Deutsche Bank Aktiengesellschaft*, No. 23-132 (2d Cir. Sep. 3, 2025), ECF No. 208 (the "Petition") (claiming "[*Ashley*] upended the sliding-scale approach in its analysis of the banks' money laundering [allegations]"), *reh'g denied* (2d Cir. Oct. 16, 2025), ECF No. 222.  Neither BNPP nor *Ashley* introduces a categorical rule that displaces *Twitter*'s sliding scale.  As the Second Circuit explained, "the intent to aid the [FTOs]" was relevant because the terrorist groups who injured the plaintiffs were "at least one step removed" from the defendants' banking services and there was no "discernable nexus" to the *specific attacks.  See Ashley*, 144 F.4th at 443–45.  *Ashley* implemented, and did not contradict, *Twitter*'s sliding scale, and the Order overlooked that implementation in sustaining the allegations here.

***Second***, **the Order overlooked that Plaintiffs' theory of liability mirrors the rejected fungibility theory in *Ashley*, requiring reconsideration.** The *Ashley* plaintiffs advanced a theory that "because Defendants engaged in widespread money laundering for individuals and entities with an apparent or possible connection to terrorists, some of the money must have gone to the terrorists' violent activities." *Id.* at 444. Plaintiffs make the same argument here, asserting that BNPP's banking services "flowed" to attacks by a disparate group of FTOs based on an attenuated chain (by Plaintiffs' own account, several steps removed from BNPP's banking services) because Iran's government allegedly "siphoned" proceeds from the oil sector to "fund" a "terrorism machine." Opp'n at 2–3.

This "terrorism machine" theory of liability mirrors the generalized claims of a terrorism "campaign" that *Ashley* rejected. *Ashley*, 144 F.4th at 445; *id.* at 448 ("the defendant must aid and abet a specific act . . . not an overall group of activity that may or may not have led to the plaintiff's particular injuries").

Plaintiffs insinuate that whereas the banking services in *Ashley* involved customers whose activities "served myriad of purposes unrelated to terrorism," Opp'n at 6, BNPP's customers had the "overriding and primary purpose . . . to flow oil and gas revenue to the Terrorist Sponsors," Opp'n at 7. But that mischaracterizes *Ashley*, which involved materially identical allegations of banking services for alleged terrorist fronts. *See Ashley*, 144 F.4th at 430–31 (describing banking services for Syndicate fronts); *id.* at 430 ("Money laundering generated a particularly 'potent form of terrorist finance' because 'regular and predictable cash flow' in U.S. dollars increased the Syndicate's effectiveness."); *see also Fraenkel*, 2025 WL 2773251, at *10 (rejecting same fungibility theory). There is no basis to distinguish the AC's allegations concerning the status of two Iranian petrochemical companies as "fronts" from the

allegations deemed insufficient in *Ashley* concerning transactions by the banks with "known and suspected fronts for Iranian terrorist groups such as Hezbollah and the IRGC-QF" and with the Russian mafia who "convert[ed] al-Qaeda's and the Taliban's sea of Rubles from their Russian opium sales into U.S. dollars." *Ashley*, 144 F.4th at 430–32.

**Third, the Order overlooked that *Ashley* requires complaints based on fungibility theories to plead that the defendant "knew or intended that [the FTOs] would receive the funds."** *Ashley*, 144 F.4th at 444–45. Plaintiffs argue the attacks were foreseeable. Opp'n at 8. *Ashley* held, however, that "[a] fungibility theory would 'evade' [the foreseeability] principle entirely" absent allegations that the defendant "inten[ded] to further a terrorist organization's terrorist activities." 144 F.4th. at 444. The AC does not plausibly allege BNPP intended or knew that it was furthering any FTO's terrorist activities. *See* BNPP's MTD at 18. Plaintiffs simply rely on allegations about Iran's general support of terrorism and BNPP's banking services to IRGC "fronts," Opp'n at 7, which this Court found barely sufficient to satisfy general awareness, Order at 2. As *Ashley* made clear, general awareness cannot be equated with intent to further terrorist activities. 144 F.4th at 438 n.12. The allegations here are thus a far cry from cases like *Kaplan* finding knowing assistance where banks' clients were publicly identified as engaging in the terrorist acts that injured the plaintiffs. *See* Mot. at 8–9 (citing *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 849–50, 866 (2d Cir. 2021)).

*Ashley*'s key holding requires dismissal of Plaintiffs' claims, as it did in *Fraenkel*. Plaintiffs make no effort to distinguish Judge Garnett's application of *Ashley*'s fungibility holding in dismissing claims against SCB brought by many of the same plaintiffs and same counsel, based on the same theory as this case. *See* Mot. at 9–10. Nor can they.

**Fourth**, Plaintiffs contradict *Ashley* by claiming that this Court should defer to the purported judgment of the political branches that "transactions in Iran's oil and gas sectors . . . had a tight nexus to the terrorist attacks" based on the imposition of sanctions on Iranian entities. Opp'n at 8–9. Plaintiffs raise this theory for the first time in the Opposition, the same argument made by Plaintiffs' counsel in their rejected petition for rehearing in *Ashley*. *Cf.* Petition at 14–15, *reh'g denied* (2d Cir. Oct. 16, 2025), ECF No. 222.

At bottom, Plaintiffs' theory of "knowing assistance" rests on "BNPP's provision of financial services that willfully violated sanctions laws," Order at 30, which is not enough under *Ashley* and *Siegel*. *Ashley*, 144 F.4th at 445 ("[E]ven though the defendant-bank purportedly gave 'hundreds of millions of dollars' to the Saudi bank and helped the bank 'flout' U.S. sanctions laws, plaintiffs failed to plausibly suggest that the U.S. bank 'knew or intended that [al-Qaeda] would receive the funds.'") (citing *Siegel v. HSBC North American Holdings, Inc.*, 933 F.3d 217, 221, 225 (2d Cir. 2019)); *see also Fraenkel*, 2025 WL 2773251, at *9–10.

## CONCLUSION

BNPP respectfully requests that the Court reconsider the portion of its Order holding that Plaintiffs plausibly alleged knowing and substantial assistance and dismiss the AC in full.

Dated: November 13, 2025
New York, New York

Respectfully submitted,

/s/ Carmine D. Boccuzzi, Jr.
Carmine D. Boccuzzi, Jr.
Abena Mainoo
Leila Mgaloblishvili
cboccuzzi@cgsh.com
amainoo@cgsh.com
lmgaloblishvili@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999

*Attorneys for Defendant BNP Paribas S.A.*

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the word-count limitations contained in Rule 6.3 of the Local Rules of the United States District Court for the Southern and Eastern District of New York and Section 4(b) of this Court's Individual Rules & Practices in Civil Cases because, excluding the parts of the document exempted by those rules, it contains 1,713 words, as calculated by Microsoft Word.

Dated: November 13, 2025
       New York, New York

Respectfully submitted,

*/s/ Carmine D. Boccuzzi, Jr.*
Carmine D. Boccuzzi, Jr.
Abena Mainoo
Leila Mgaloblishvili
cboccuzzi@cgsh.com
amainoo@cgsh.com
lmgaloblishvili@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999

*Attorneys for Defendant BNP Paribas S.A.*